## BOAL et al. v. METROPOLITAN MUSEUM OF ART OF CITY OF NEW YORK et al.

(District Court, S. D. New York. February 3, 1923.)

1. Wills ⬤⟾440—Not to be construed with regard to unexpressed intent.

It is the court's duty in construing a will to construe language of testator without regard to his unexpressed intent.

2. Wills ⬤⟾806—No inference that testator did not intend legatee to be primary legatee, because annexed charge would exhaust the legacy.

Under will bequeathing property to museum but providing that, if trust fund should be insufficient, there was bequeathed to trustee for purposes of sale sufficient of the property to make good the deficiency, no inference could be drawn, from fact that deficiency in the trust fund would have exhausted the bequest, that museum was not intended as primary legatee, where there was provision for accumulations of income under the trust, and testator might also have been hopeful of increase in investments.

3. Wills ⬤⟾806—Legatee whose legacy was subject to condition held the primary legatee.

Under will bequeathing property to museum, subject to condition that, if trust fund should prove insufficient, there was bequeathed to trustee for purposes of sale sufficient of the property to make good the deficiency, the museum was the primary legatee, even though testator was ill advised in supposing that museum would receive anything.

4. Wills ⬤⟾821 (1), 849—Legatee whose legacy was subject to condition in favor of residuary legatee held to take benefit of invalidity of residuary legacy.

Under will bequeathing collection of articles to museum subject to condition that, if a trust fund was insufficient, there was bequeathed to the trustee for purposes of sale sufficient of the articles to make good the deficiency, the condition constituted a charge on the legacy; but whether strictly a charge or not, where it was in favor of residuary legatee and failed because the residuary legacy was invalid, the museum and not the next of kin took as result of the lapse.

5. Trusts ⬤⟾191 (3)—Trustee, to whom sufficient of certain articles to supply deficiency in fund were bequeathed for purposes of sale, not bound to sell undivided interest.

Under will bequeathing collection of articles to museum subject to condition that, if a trust fund was insufficient, there was bequeathed to the trustee for purposes of sale sufficient of the articles to make good the deficiency, the trustee was not required to sell undivided interest in the whole collection, but had right to choose the articles to be sold.

In Equity. Suit by Theodore Davis Boal, as executor of Annie B. Davis, deceased, and another, against the Metropolitan Museum of Art of the City of New York and another. On motion to dismiss after amendment of bill. Bill dismissed.

See, also, 292 Fed. 299.

Wm. E. Carnochan and Herbert Parsons, both of New York City, for plaintiffs.

De Forest Bros., of New York City, for New York Museum of Art.

Dorman & Dana, of New York City, for Rhode Island Hospital Trust Co.

LEARNED HAND, District Judge. [1, 2] The amendments to the bill are not in my judgment material. They consist of conclusions as

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to the testator's intention, the legal effect of the documents pleaded, the addition of two modifying deeds, and the fact that at the death of Davis and of Mrs. Andrews the deficiency of the trust fund would have exhausted the whole bequest to the museum. All but the last I may disregard for all purposes, since it is the court's duty to find out the legal effect of documents and to construe the language of the testator, without regard to his unexpressed intent. The last allegation throws no new light on the testator's purposes. It is supposed to show that he could not have intended the Museum as primary legatee. In the first place, there is no such reasonable inference, and, in the second, the form of the bequest would contradict it, if there were.

Davis could tell nothing about the size of his estate on the death of the longer liver of the two legatees for life. One-half the income, so far as legal, was to accumulate after the death of the first, and the survivorship might easily last for ten years. That of itself would probably add near a third to the estate. Besides, he might have been hopeful of the increase in his investments. What value he assumed his estate would have is therefore all pure speculation.

[3] Besides, even if I were to allow myself to conjecture, it would carry me nowhere. The plaintiffs' argument to be of any value must be that the collection was given primarily to the trusts, since on the face of things they would use it all up, and that the museum was put in only against possible residue. However reasonable that might be, looking at the actual figures when Davis died, nothing can be plainer than that he did not think of the gifts in any such way, but in precisely the opposite. He bequeathed the collection outright to the museum, and it was the trusts that came in only by way of condition or proviso (he used both words). It may be that he was ill advised to suppose that the museum could be the primary object of his bounty, but he certainly did, and I cannot disregard his words. The explanation suggests itself that in August, 1911, he thought his estate larger than it was when he died, and perhaps that is the truth; but I will not resort to speculation on either side. For whatever reason, the fact stands out that he meant the museum to be the primary legatee.

[4] The argument on the amended bill developed into a reargument of the old questions, which I was content to allow, but which has only confirmed me in my original conclusion. I have to do with a situation quite outside of anything which the testator had in contemplation, and it is therefore obvious that any solution is bound to be verbal and indeed formal. Yet while it is idle to speculate upon what he personally would have done had he been able to look ahead, courts have always permitted themselves, within limits, to impute to testators an intent which they could not foresee. While I think the cases conclusive, I shall claim the same right so far as they are not authoritative.

The plaintiffs argue first that the two provisions of the seventh item may be read as alternate executory limitations, one in case there was no deficiency, the other in case there was. On such a theory the museum would have had no right to possession of the chattels in case Mrs. Davis survived Mrs. Andrews; their gift would never have vested. The testator used the best accredited form for an absolute bequest of

chattels. It could not seriously be even argued that this did not create a vested remainder except for the words "with proviso hereinafter made." But that did not suspend the gift. Even if I take "proviso" as equal to "condition," though in statutes at any rate there is thought to be a difference, there is not the slightest justification for saying that it was a condition precedent. And if there were, how could it survive the express provision for enjoyment by the museum before the supposed condition precedent should .occur? I therefore must reject the notion of alternative contingent remainders; the bequest was vested, and the gift over was either an executory limitation or a charge.

It really does not make any difference which it is called, because the plaintiffs have nothing to stand on at best but Doe v. Eyre, 5 C. B. 713, which if pressed to a decision I should not follow. Proprietors, etc., v. Grant, 3 Gray (Mass.) 142, 156, 157, 63 Am. Dec. 725; Farnam v. Farnam, 83 Conn. 369, 384, 385, 77 Atl. 70; Saxton v. Webber, 83 Wis. 617, 629, 830, 53 N. W. 905, 20 L. R. A. 509; Sullivan v. Garesche, 229 Mo. 496, 509, 510, 129 S. W. 949, 49 L. R. A. (N. S.) 605; Starr v. Starr Methodist Church, 112 Md. 171, 183, 184, 76 Atl. 595. It is, of course, true that the condition may be independently annexed to the first devise so as to make it a base-fee (First, etc., Society v. Boland, 155 Mass. 171, 29 N. E. 524, 15 L. R. A. 231; Leonard v. Burr, 18 N. Y. 96), but that is a matter of construction. In the case at bar there is no reason to impose the condition upon the gift because it does not occur in the bequest. The words "with proviso,", etc., annexed no condition except that of the gift over itself; they did not limit the estate created by an independent condition, as is necessary to defeat it.

In all the cases cited the gift over was illegal under some statute, and the condition had actually occurred or its future occurrence was the subject of the decision. They all therefore raise the same point as was raised in Doe v. Eyre, supra, i. e., whether the condition on which the limitation over takes effect is to be treated as itself annexed to the first gift, or whether that is absolute, subject only to the gift over. This uniform current of American authority, coupled with the almost unanimous disapproval of Doe v. Eyre, supra, would in my judgment make the plaintiffs' position quite untenable in any view.

However, I prefer to regard the gift over as a charge coupled with an ancillary power of sale. The objections are that it is not formally such, and that it gives the trustee greater rights than a chargee would have. But it is of no consequence whether this provision has the formal characteristics of a charge or not. The only important question is whether it is like a charge in the single quality that, being void ab initio, it is to be deemed to be taken out of the bequest in the sense that the bequest was of a residue, or whether the testator's intention was that the bequest was only to bear so much burden as was necessary to accomplish his purposes in the trusts.

That is the rule as laid down in Tucker v. Kayess, 4 K. & J. 339. I have already mentioned the cases showing how strong is the tendency of the English courts to treat all such provisions, call them charges or not, not as exceptions but as sinking into the main gift. Most of

the wills construed as little created charges as the case at bar. Thus In Re Cooper's Legacy, 23 Law J. (N. S.) Ch. 24, the estate was devised to trustees "to raise by sale or otherwise, out of my said estates," the sum of £2000. There were subsequent trusts to the testator's son. That was a case, I should think, of an exception out of the devise in chief, if such provisions can be exceptions by implication at all. I have already stated how strongly Lord Hatherly put the rule, and Lord Justice Turner on the appeal agreed that the charge was only for the purpose of raising the legacy, and when it failed, the testator's purpose was to let the devise take effect without exception.

Cooke v. Stationer's Co., 3 Mylne & Keen, 262, was an even stronger case. There the devise was to executors to sell so much as might raise £10,700, which the testator gave in legacies, and some of which were invalid. The residue went to his wife. The ruling of Sir John Leach that this provision was a charge certainly goes to the extreme as Lord Hatherly observed in Re Cooper's Legacy, supra. In Kennall v. Abbott, 4 Ves. Jr. 802, Lord Alvanley had before him a devise in trust to sell and out of the money resulting to pay a legacy which turned out to be invalid. This came to the residuary legatee, there being no specific devise or bequest to catch it. Perhaps the actual ruling is no more than that the property being regarded as converted, the residuary clause would gather it up, yet regarded as an exception it might well have been held to pass to the next of kin, since in that aspect it would be an exception out of the very residuary clause itself. In any case Lord Alvanley treated it as analogous to a charge on a devise.

In the light of these cases, it is clear, I think, that the precise form of the charge is a matter of no moment whatever. And so it is not necessary to my decision to say that this is strictly a charge. Yet I think, as I have said, that it is a charge coupled with an ancillary power of sale to satisfy it. It is very doubtful whether the trustee could have demanded possession, and whether he was not limited to a selection and sale of so much of the chattels as the trusts required. But it makes no difference if I am wrong. If it was more than that, it falls as much within the rule as though it was a charge, strictissimi juris. Indeed, it is not the form of the provision which counts so much as the character of the event which defeats it.

Thus, it has been questioned whether if the charge be for charity the heir will not take (per Lord Eldon in Tregonwell v. Sydenham, 3 Dow. 194, 209). There can, of course, be no reason why the rule should apply simply to charities, and for this reason Lewis, in his Ninth English Edition, at page 166, suggests that it may depend upon whether the event which defeats the charge can be thought to have been within the contemplation of the testator. That might indeed be a reasonable rule, but the later cases do not bear it out, as I have shown. It is difficult to tread a consistent path, but I venture to believe that the most satisfactory explanation, since most of the cases arise between devisee and heir, is that the disinherison of the heir became progressively less unpalatable to the English courts. At least, it is significant that the lat-

er cases seem all to have sunk the charge in the devise, regardless of the cause of its invalidity, even when, for example, as in Kennall v. Abbott, supra, the legatee had practiced a fraud upon the testatrix, an event which could under no circumstances have been contemplated by her.

So much for the authorities which seem to me to bear out the defendants from any aspect. Viewed also from the presumed intention of the testator, there seems to be no reason to treat the charge as an exception. I can understand the argument which asserts so, where the case comes up between a specific legatee, a chargee who is a third person, and the residuary legatee. There, if the charge fails, it may with some force be reasoned that the testator had meant the specific legatee to have no more than the bequest less the charge. The charge having failed, he may be thought to have intended his residuary legatee to take the amount charged as a general hæres factus into whose lap should fall all that was not otherwise disposed of.

I cannot however, understand how this should be held when the chargee is also the residuary legatee as here, and where the invalidity arises from a default, not in the charge, but in the residuary bequest itself. In that case the testator has clearly shown his purpose to benefit the specific legatee and to disinherit his next of kin. There seems no rational ground for saying, because he was willing to the extent of the charge to favor the residuary, as against the specific, legatee, that he had the least purpose to favor his disinherited next of kin as against the specific legatee. Therefore I think that where, as here, the charge is in favor of the residuary legatee, it cannot be supposed to be an exception, but that there is every antecedent reason to treat it as sinking into the specific bequest. Any plausibility which the argument has in other circumstances disappears under such a will as this.

Nor is that clause in the residuary bequest operative which sweeps into it all gifts not validly made. The charge was properly raised; it was the residuary bequest which was invalid. The charge was ineffective only because it was part of that bequest itself. Clearly the clause in question referred only to invalidity which arose from some defect single to a specific or pecuniary bequest, not to a defect which defeated altogether the residuary bequest itself, into whose ineffective arms the supposed invalid bequest was to fall only to drop further into the grasp of the next of kin.

In the case at bar I do not forget that the plaintiffs argue that the residuary clause is still effective except that the legatee holds on a resulting trust for the next of kin. I am dealing with the proper intent to impute to the testator, and on that issue it can make no difference whether the next of kin takes at law or through a resulting trust.

[5] The only other matter which I need notice is that part of my former opinion (292 Fed. 299) in which I said that a gift over must be of an undivided interest in each chattel. While I am flattered that the plaintiffs should think this statement, which was quite unnecessary to the decision, worthy of so formidable a collection of cases, I cannot

agree that it is necessary to discuss it at length. A legatee like this trustee, of course, had the right to choose; it had certain chattels to sell and need not have sold an undivided interest in the whole collection. I am sorry that I should have written so awkwardly as apparently to be harboring a contrary opinion. The question I had in mind was of the interests in the collection before the trustee's selection. During that period I must own that I am even yet unable to see what other legal rights could exist in the chattels than those I described.

The plaintiffs having now framed their bill after full deliberation, I understand that no further amendments are desired. Therefore the defendants may take a decree dismissing the bill upon the merits, with costs.

Settle decree on notice.