**SUTHERLAND, Alien Property Custodian, et al. v. SELLING et al.** *

(Circuit Court of Appeals, Ninth Circuit. December 20, 1926.)

No. 4980.

**1. Courts ⬤⟿360—State court's construction of will as relating to trust property within state where testator had been domiciled held binding on federal court.**

Where trust property, trustees, and objects of testator's bounty were all located in the state where he had had his domicile, where his will was made and probated, *held* decree of state Supreme Court construing will, and laws of the state as affecting the trust, was binding on federal court sitting in the same state, regardless of any question of parties or res judicata.

**2. War ⬤⟿12—Alien Property Custodian, by seizing corporate stock, acquires no rights superior to rights of corporation or other stockholders.**

The rights of the Alien Property Custodian are not superior to the rights of the corporation whose stock he has seized or to the rights of other stockholders.

**3. War ⬤⟿12—Alien Property Custodian, on seizing stock of private corporation, acquires rights of stockholder only.**

Alien Property Custodian's seizure of stock in a private corporation vests in him the rights of a stockholder, and nothing more.

Appeal from the District Court of the United States for the District of Oregon.

Action by Howard Sutherland, as Alien Property Custodian, and another, against Ben Selling and others. Decree for defendants, and plaintiffs appeal. Affirmed.

E. W. Wickey, of Washington, D. C., Thomas Mannix, and Guy C. H. Corliss, both of Portland, Or., for appellants.

Joseph, Haney & Littlefield and John C. Veatch, all of Portland, Or., for appellees.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

RUDKIN, Circuit Judge. This was a suit by the Alien Property Custodian and the E. Henry Wemme Company, a corporation organized and existing under the laws of the state of Oregon, against the trustees

of the E. Henry Wemme Endowment Fund, a corporation organized and existing under the laws of the state of Oregon, the E. Henry Wemme Endowment Fund as such corporation, the Attorney General of the state of Oregon, and the district attorney of Multnomah county, state of Oregon, to recover certain propery devised in trust by E. Henry Wemme, deceased, and for an accounting.

E. Henry Wemme died testate at Portland, Or., December 17, 1914. At the time of his death his estate consisted largely of the capital stock of the E. Henry Wemme Company, and of certain real property in the city of Portland. The stock in the corporation was bequeathed to relatives, a majority of whom lived in Germany, and became alien enemies upon our entry into the World War. The real property in Portland, of the value of $350,000, was devised to trustees in trust for the following uses and purposes:

"Sixth: I give, devise and bequeath unto H. A. Weis, Jessie M. Carson and J. J. Cole and their successors, lots 1, 4, 5 and 8 in block 53 in Couch's addition to the city of Portland and also lots 1 & 4 and the south 20 feet of lot 5 in block 9 of Couch's addition to the city of Portland and the south 120 feet of block 72 in East Portland, now a part of Portland, and all now being in the city of Portland, Multnomah county, state of Oregon, to be in trust, however, by said H. A. Weis, Jessie M. Carson and J. J. Cole and their successors for the use and purposes hereinafter set forth as follows: Said trustees and their successors shall have power and authority to hold, manage, improve, repair or lease said property or any part thereof without any other authorization than that hereby given, and shall collect all rents, issues and profits arising from said property and shall from such rents, issues and profits first pay all taxes, assessments and charges of whatsoever kind or nature lawfully made against said property, or any part thereof.

"My said trustees shall immediately after my death cause to be formed a corporation under the name of 'E. Henry Wemme Endowment Fund' under and by virtue of the laws of the state of Oregon, providing that the duration of said corporation shall be perpetual, that its principal office and place of business shall be in the city of Portland, county of Multnomah and state of Oregon, with a capital stock to be determined by my trustees, not to exceed, however, the reasonable value of the property hereinbefore devised to my trustees, at the time of such incorporation, and incorporated for the purpose of buying, owning, holding, managing,

*Certiorari denied 47 S. Ct. 475, 71 L. Ed. ——.

improving, mortgaging and leasing the real property hereinbefore devised to my trustees, and for the purpose of conducting a maternity home or laying-in hospital for unfortunate and wayward girls in the city of Portland, Multnomah county and state of Oregon.

"My said trustees shall jointly subscribe for all of the capital stock of said corporation, and shall thereupon complete the organization of such corporation and cause such action to be taken by it that it shall purchase of my said trustees all of said property hereinbefore devised to my trustees, and in payment therefor issue its capital stock to my said trustees, jointly, and thereupon said trustees shall by good and sufficient conveyance or conveyances grant, bargain, sell and convey to said E. Henry Wemme Endowment Fund a corporation, all of the real property hereinbefore devised to said trustees, and thereupon the capital stock of said corporation of E. Henry Wemme Endowment Fund shall be issued to said trustees jointly in one certificate, which capital stock witnessed by said certificate shall be held in trust by said trustees, and disposed of by them as hereinafter directed.

"Immediately upon the completion of the organization of said E. Henry Wemme Endowment Fund, and the transfer to said corporation last mentioned of the property herein devised to my trustees, then and thereupon said corporation shall have the right to borrow a sum of money not to exceed $75,-000.00 upon the promissory note of said corporation, and to secure the payment of such promissory note by mortgage executed by it covering lots 1 and 4 and the south 20 feet of lot 5 in block 9 of Couch's addition to the city of Portland, in Multnomah county, state of Oregon, said promissory note and mortgage shall contain such provisions and conditions as may be determined and agreed upon by said corporation and the person, firm or corporation from whom it may secure such loan.

"After securing money on the mortgage hereinbefore provided to be executed by it the said E. Henry Wemme Endowment Fund shall proceed to purchase suitable real estate as a site for a maternity home for unfortunate and wayward girls, and shall construct thereupon a suitable home for the reception, accommodation, care, treatment and comfort of unfortunate and wayward girls, who may be in need thereof, and shall furnish, equip and maintain such maternity home without cost or charge to the inmates thereof, but shall use the rents, issues and profits arising

and issuing out of the property owned by said E. Henry Wemme Endowment Fund, in maintaining, furnishing and equipping said maternity home, and in caring for and providing for the inmates thereof, making a provision, however, should the said corporation deem it necessary, for a sinking fund from such rents, issues and profits to pay out thereof, when it shall have become due said note given by the corporation as hereinbefore provided. Said maternity home shall be known as the White Shield of Portland, Oregon, and the inmates shall be admitted thereto irrespective of religion or nationality.

"Said corporation by and through my said trustees who shall constitute the board of directors thereof, shall after the construction of said home open and thereafter conduct the same for the accommodation, care and keeping of unfortunate and wayward girls as a lying-in hospital without charge therefor.

"In case of the death, resignation or permanent inability of any or either of my said trustees to act as such trustee or trustees, then and in that event the successor or successors of my trustees shall have the right and shall name or appoint the successor or successors of my trustees who may die, resign or be permanently disabled from the performance of the duties as my trustee hereunder, and such successor shall have the right in the same way to appoint their successors and so it shall continue, and a majority of the trustees shall have the right to exercise full power and authority under and by virtue of the provisions of this my last will and testament.

"Upon the expiration of three years from and after my death I direct that my trustees transfer to the different churches of the church of Christ Science of Portland, Oregon, authorized and chartered by the head Church of Christ Science known as the Mother Church of Boston, Massachusetts, all of the capital stock of the said E. Henry Wemme Endowment Fund in equal parts, to be theirs forever, for their own respective uses and benefit and without any charge or trust reserved to my estate of whatsoever kind or nature, and thereupon my trustees and their successors shall be considered as having completed their duties hereunder and discharged.

"I hope, however, this is not directory, but merely a suggestion that the maternity home constructed as hereinbefore provided shall be continued by said corporation, E. Henry Wemme Endowment Fund, perpetu-

ally, and forever, but I do not make this binding upon said Church of Christ Science, or upon said E. Henry Wemme Endowment Fund, a corporation, for the reason that I have implicit faith and confidence in the Church of Christ Science and believe that they will be perpetual and I realize the inability of one now living to determine what in the future might be the greatest need and benefit to suffering humanity, and therefore I have given absolutely and without reservation all of the stock of said corporation of said E. Henry Wemme Endowment Fund, to said Church of Christ Science believing that they will expend the rents, issues and profits and all the proceeds of the said E. Henry Wemme Endowment Fund in a manner so as to create the greatest relief for the greatest number of suffering humanity."

The E. Henry Wemme Company was named in the will as residuary legatee. After the death of the testator and the probate of his will, the trustees therein named incorporated the E. Henry Wemme Endowment Fund, and conveyed the trust property to the new corporation, subscribing for the entire capital stock of $350,000 jointly in their own names. The corporation thus formed borrowed the sum of $75,000 by note and mortgage, purchased a suitable site in the city of Portland for the maternity home, erected the necessary buildings, and maintained the home for a period of three years after the death of the testator. At the expiration of the three-year period the trustees transferred the stock to the six Christian Science churches of Portland, in equal shares, a member of each church becoming a director of the corporation. The churches, by reason of the religious belief of their members, found that they could not maintain the maternity home, and the same was sold to the Salvation Army for the sum of $80,000. The Wemme heirs thereupon brought suit against the churches in one of the state courts to recover the devised property, contending that the trust created by the will was void for uncertainty; that the defendant churches had breached the trust by the sale of the maternity home to the Salvation Army, and by their refusal to carry out the particular charity specified by the testator, and that by reason thereof the trust property had reverted to the heirs at law. By an order of court the Attorney General of the state was made a party defendant. The Attorney General, appearing on behalf of the state, alleged that the churches had breached the trust as claimed, and asked that the trust be enforced; that the churches, or their members, be re-

moved as trustees; and that new trustees be appointed to administer the trust in accordance with the terms of the will and the wishes of the testator. On the trial of that action the court entered a decree dismissing the complaint and cross-complaint, and decreed that each of the six churches was the absolute owner of one-sixth of the capital stock of the E. Henry Wemme Endowment Fund, discharged of any trust obligation whatsoever. The E. Henry Wemme Company was not made a party to that action, but its name was inserted as a party plaintiff in the findings and decree at the close of the trial. How the name came to be so inserted is not material at the time, but it is contended by the plaintiffs in the present suit that the corporation was made a party to the prior suit without its authority and without its knowledge. An appeal was prosecuted to the Supreme Court of the state of Oregon (Wemme v. First Church of Christ Scientist, of Portland, 110 Or. 179, 219 P. 618, 223 P. 250), where the decree in favor of the churches was reversed. The Supreme Court of the state upheld the charitable trust, caused the appointment of new trustees to administer it, and directed the several churches to account to the new trustees for all property and funds received by them under the provisions of the will. That decree has been fully executed, new trustees have been appointed by or under the direction of the court, and the new trustees are now in full possession of the property, charged with the duty of administering the trust in accordance with the will of the testator, under the direction and supervision of the courts. The Alien Property Custodian, upon his appointment, demanded of the E. Henry Wemme Company the corporate stock bequeathed by the testator to the alien enemies, which amounted to 92 per cent. of the entire capital stock of the company. This demand was complied with, the stock certificates in the name of the alien enemies were canceled, and new certificates were issued to the Alien Property Custodian in lieu thereof. The Custodian is still the owner of certificates representing 72 per cent. of the capital stock; 20 per cent. thereof having been released to one of the legatees.

The present suit was brought in the court below by the Custodian, and by the E. Henry Wemme Company, claiming substantially the same relief as was claimed by the heirs in the former suit in the state court and upon substantially the same grounds. It was further alleged and claimed that the decree of the state court was void as to the E. Henry

Wemme Company, because that company was not a party to the suit and never had its day in court. Jurisdiction of the court below was invoked upon two grounds: First, because the Custodian was an officer of the United States, and the cause of action in his favor arose under the Constitution and laws of the United States; and, second, because the decree of the state court deprived the E. Henry Wemme Company of its property without due process of law. A motion to dismiss was interposed in the court below for want of sufficient facts, for want of jurisdiction, and for misjoinder of parties plaintiff. This motion was denied, and upon the final hearing the court dismissed the bill of complaint, assigning two reasons for its decision: First, because the decision of the Supreme Court of the state construing the will was binding on the federal court sitting in that state; and, second, because, whether binding or not, the decision of the Supreme Court of the state was correct. From the decree of dismissal the present appeal has been prosecuted to this court.

[1] This is but another illustration of attempts so often made to circumvent the judgments and decrees of state courts of competent jurisdiction by appealing to the federal courts on some fancied constitutional ground. Here the testator had his domicile in the state of Oregon, his will was made and probated there, his property was there, the trustees named in his will were there, as were the objects of his bounty. The Supreme Court of the state had full and complete jurisdiction over the subject-matter of the action, with competent parties before it; the Attorney General of the state upholding, and the churches opposing, the charitable trust created by the will. Thus vested with jurisdiction, the highest court of the state has construed the will and the laws of the state, and that construction is binding on a federal court sitting in the same state, regardless of any question of parties or of res adjudicata. The decision not only fixed the rights of the parties to that litigation, but it likewise established the law of charitable trusts in that jurisdiction so far as the federal courts are concerned. As said by the Supreme Court in Uterhart v. United States, 240 U. S. 598, 603, 36 S. Ct. 417, 418 (60 L. Ed. 819): "It is very properly admitted by the government that the New York decree is in this proceeding binding with respect to the meaning and effect of the will. The right to succeed to the property of the decedent depends upon and is regulated by state law, * * * and it is obvious that a judicial construction of the will by a state court of competent jurisdiction determines not only legally but practically the extent and character of the interests taken by the legatees."

[2, 3] It would be unfortunate indeed if the law were otherwise, because in that event there might be one rule of property for citizens of the state and a different rule for citizens of other states and aliens. Had this suit been prosecuted by the residuary legatee in the courts of the state of Oregon, the result can readily be foreseen, and it was doubtless for this reason, and for this reason alone, that the jurisdiction of the federal court was invoked. The rights of the Alien Property Custodian are not superior to the rights of the corporation whose stock he seized, or to the rights of other stockholders. The Custodian did not seize the property of the endowment fund, and had no right to seize it. He seized only the stock of alien enemies in a private corporation, and that seizure vested in him the rights of a stockholder and nothing more. Such rights, under ordinary circumstances, must be enforced through the medium of the corporation, and the rights of the Custodian as a stockholder forms no exception to the general rule. For these reasons we fully agree with the court below that the decision of the Supreme Court of the state of Oregon is sound in principle and is controlling here.

The judgment is affirmed.